UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHERIE D. HOSKIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:19-CV-00433-SPM |
| | ) |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of Defendant Andrew M. Saul, the Commissioner of Social Security, denying the application of Plaintiff Cherie D. Hoskin ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find substantial evidence to support the decision denying benefits, I will affirm the Commissioner's denial of Plaintiff's application.

### I. BACKGROUND

On March 2, 2016, Plaintiff applied for DIB, alleging a disability onset date of February 4, 2016, and asserting disability due to spondylosis, bulging discs, depression, irritable bowel syndrome, diabetes, asthma, diverticulitis, vertigo, and acid reflux. (Tr. 176, 204). Her application

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). See also § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in person occupying the office of Commissioner of Social Security).

was initially denied on July 21, 2016. (Tr. 107). Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 114). On August 1, 2018, following a hearing at which Plaintiff, who was represented by counsel, testified, the ALJ found Plaintiff was not under a "disability" as defined in the Act. (Tr. 10-31). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's ("SSA") Appeals Council. (Tr. 172-74). On February 9, 2019, the SSA's Appeals Council denied her Request for Review. (Tr. 1). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); [2] *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities;" if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648

---

[2] All references throughout this opinion are to the version of the regulations that was in effect as of the date of the ALJ's decision.

3

F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, February 4, 2016; that Plaintiff has the severe impairments of lumbar degenerative disc disease with sacroiliitis, asthma, obesity, and mental impairments variously diagnosed as anxiety, depression, and bipolar disorder; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 16-17). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except that she cannot climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs, as well as balance, stoop, kneel, crouch, and crawl; she should avoid all exposure to extreme cold and extreme heat; she should have only occasional exposure to wetness and humidity; she should have no exposure to irritants, such as dusts, odors, fumes, and gases; she

cannot work at unprotected heights, or around hazardous machinery and unshielded moving mechanical parts; she should not drive motor vehicles as part of the work function; she is able to understand, remember, and carry out simple, routine instructions consistent with SVP levels 1 and 2 type jobs; and, she should have no interaction with the general public and only occasional interaction with coworkers. (Tr. 20). The ALJ found that Plaintiff is unable to perform any of her past relevant work. (Tr. 24). However, relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff would be able to perform occupations including folding machine operator (Dictionary of Occupational Titles ("DOT") No. 208.685-014, light exertion level, 75,000 jobs in the national economy), garment sorter (DOT No. 222.687-014, light exertion level, 27,000 jobs in the national economy); and lens matcher (DOT No. 713.687-030, light exertion level, 20,000 jobs in the national economy). (Tr. 25). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from February 4, 2016, the alleged onset date, through March 31, 2017, the date she was last insured. (Tr. 25).

## IV. STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence

presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V. DISCUSSION

Plaintiff argues that the ALJ reached a flawed RFC assessment because the ALJ (1) did not properly weigh the medical opinions regarding her mental functioning, which in turn, led the ALJ to pose hypothetical questions to the vocational expert that failed to capture the "concrete consequences" of her mental impairments; and (2) failed to properly evaluate her subjective complaints. (Doc. 12 at 7). The Commissioner argues that the ALJ properly evaluated Plaintiff's RFC, and based the RFC on substantial evidence in the record as a whole.

A claimant's RFC is "the most a claimant can do despite her limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). It is the ALJ's responsibility to determine a claimant's RFC "based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

In this case, the ALJ conducted a review of Plaintiff's testimony and medical records, conducted an analysis of the consistency of her subjective complaints with the evidence of record,

6

analyzed each of the medical opinions in the record, and made the following findings regarding Plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) except that she cannot climb ladders, ropes, or scaffolds, can occasionally climb ramps or stairs, as well as balance, stoop, kneel, crouch, and crawl, she should avoid all exposure to extreme cold and extreme and heat, and should have only occasional exposure to wetness and humidity, she should have no exposure to irritants, such as dusts, odors, fumes, and gases, and she cannot work at unprotected heights, or around hazardous machinery and unshielded moving mechanical parts; she should not drive motor vehicles as part of the work function; she is able to understand, remember, and carry out simple, routine instructions consistent with SVP levels 1 and 2 type jobs; and she should have no interaction with the general public and only occasional interaction with coworkers.

(Tr. 20). In reaching his decision, the ALJ considered and gave great weight to the opinions of two consultative psychological experts, Dr. Darline Thorson ("Dr. Thorson") and Dr. Derek Vines ("Dr. Vines"), each of whom reviewed the record and assessed no more than moderate mental limitations consistent with an ability to perform a range of simple, routine work tasks.

### A. ALJ's Evaluation of Medical Opinions of Drs. Thorson and Vines

As noted, the ALJ assigned great weight to the opinions of the state agency psychological consultant, Dr. Thorson, as well as the consultative psychiatric expert, Dr. Vines. (Tr. 23). Dr. Thorson opined that Plaintiff was "not significantly limited" in her ability to interact appropriately with the general public; to maintain socially appropriate behavior; to ask simple questions or request assistance; to perform activities within a schedule, maintain regular attendance, and be punctual. (Tr. 99-100). Dr. Thorson also opined that Plaintiff is "moderately limited" in the ability to understand and remember detailed instructions; to maintain attention and concentration for extended periods; to carry out detailed instructions; the ability to work in coordination with or in proximity to others without being distracted by them; to accept instructions and respond

7

appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 99-100). Dr. Thorson also stated that "the evidence in file indicates the claimant can . . . relate appropriately to coworkers and supervisors in small numbers for short periods." (Tr. 100). Dr. Vines opined that Plaintiff was not limited in her ability to understand, remember and carry out instructions. (Tr. 739). He further opined that Plaintiff was moderately limited in her ability to interact appropriately with the public, co-workers, and supervisors due to Plaintiff's reported irritability, but noted that such limitation would be intermittent in nature, and that Plaintiff has indicated that medication helps with such irritability. (Tr. 740).

The ALJ assigned great weight to these doctors' opinions, as he found them to be consistent with Plaintiff's longitudinal mental status examination findings and her mental health treatment, and he also found the two opinions consistent with each other. Plaintiff does not challenge the weight the ALJ assigned to the opinions. Rather, she contends that because he assigned the opinions great weight, the ALJ was required to include additional limitations in her RFC concerning her ability to interact with supervisors that she asserts are supported by the opinions. Plaintiff further makes the related argument that the ALJ's failure to include a specific limitation concerning her ability to interact with supervisors led the ALJ to pose hypothetical questions to the testifying VE that did not fully capture the limitations imposed by her mental impairments.

Plaintiff's argument is without merit. First, it is well-established in the Eighth Circuit that unless an ALJ assigns controlling weight to an opinion, he is not required to wholly adopt any medical opinion. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). However, there is no requirement that an RFC

8

finding be supported by a specific medical opinion. *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *see also Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians."). Furthermore, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619-20. Therefore, even if the two opinions at issue did indicate that Plaintiff had limitations in her ability to interact with supervisors, the ALJ was not required to include such limitations in her RFC.

In any event, even if the ALJ had erred by not including a specific limitation regarding interaction with supervisors, any such error would be harmless. Based on the testimony of the VE, the ALJ concluded that Plaintiff retained the RFC to perform certain occupations, including folding machine operator (Dictionary of Occupational Titles ("DOT") No. 208.685-014, light exertion level, 75,000 jobs in the national economy), garment sorter (DOT No. 222.687-014, light exertion level, 27,000 jobs in the national economy); and lens matcher (DOT No. 713.687-030, light exertion level, 20,000 jobs in the national economy). (Tr. 25). If the ALJ had included, when questioning the VE, a limitation concerning Plaintiff's ability to interact with supervisors, these jobs would not have been eliminated. Appendix B to the DOT indicates that each of these occupations requires no significant interactions with other people, including supervisors.[3] *See Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (ALJ error harmless where there is no indication

---

[3] Appendix B to the DOT explains that the fifth digit of the occupational code reflects the relationship to people that an employee would be expected to have in the given occupation. Each of the three jobs suggested by the VE have "8" as the fifth digit, which corresponds to interactions with people that would generally be limited to "[t]aking instructions" by "[a]ttending to the work assignment instructions or orders of supervisor," and to which "[n]o immediate response [would be] required unless clarification of instructions or orders is needed." *See* DOT, U.S. Dep't of Laber, App'x B, "Explanation of Data, People, and Things" (4th ed. rev. 1991). Additionally, the job descriptions for these positions indicate that contact with people is quite limited.

that the ALJ's decision would be any different absent the error); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (ALJ error in failing to ask VE about possible conflicts between testimony and DOT harmless since no conflict actually existed). Because none of the three jobs identified by the VE would require significant interaction with supervisors, any error was harmless, as the omission of such a limitation would have had no effect on the VE's testimony or on the ALJ's conclusions.

## B. The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff's second argument is that the ALJ failed to properly evaluate Plaintiff's subjective complaints regarding the limiting effects of her symptoms related to chronic back pain, depression, and anxiety. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).[4] In examining the record, the Commissioner must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.

---

[4] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017). This clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to be considered remain the same under the new ruling. *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. § 404.1529.

1984)). *See also* SSR 16-3p, 2017 WL 5180304, at *7-*8 (describing several of the above factors, as well as evidence of treatment other than medication that an individual receives); 20 C.F.R. § 404.1529(c)(3) (same).

SSR 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).

After review of the record, the Court finds that the ALJ conducted a proper assessment of Plaintiff's symptoms of pain, consistent with SSR 16-3p and the relevant regulations, and that his assessment is supported by substantial evidence. As a preliminary matter, the Court notes that the ALJ did not entirely discredit Plaintiff's complaints of pain in her back, nor the symptoms associated with her mental impairments. The ALJ acknowledged Plaintiff's testimony that she had back pain that affected her ability to stand, sit, or lift. (Tr. 21). He limited her to light work and to only occasionally climbing ramps or stairs, balancing, stooping, kneeling, and crouching, and he found that she could never climb ladders, ropes, or scaffolds. (Tr. 20). As to her mental functioning, the ALJ acknowledged Plaintiff's stated difficulties, including poor sleep, social anxiety, poor memory, and difficulty concentrating, (Tr. 21), and the RFC accordingly limited her to simple, routine tasks in positions that required no interaction with the general public and only occasional interaction with coworkers. (Tr. 20). To the extent that the ALJ did not find all of Plaintiff's claimed symptoms to create limitations that should be included in the RFC, the ALJ did so only

after conducting an appropriate analysis of the record and the relevant factors, and making specific findings regarding the consistency of Plaintiff's asserted symptoms with the record. (Tr. 21-24).

First, the ALJ reasonably found Plaintiff's reported daily activities somewhat inconsistent with her complaints of disabling pain and mental impairments. (Tr. 22). The record indicates that Plaintiff was capable of driving to doctors' appointments (Tr. 40), doing light cleaning with the ability to take breaks (Tr. 50), shopping in stores (Tr. 48, 356, 367, 443); fishing once or twice a week for "a couple hours" at a time when the weather is warm enough (Tr. 47); and traveling with her husband to her Mother's home two hours away approximately once every three months. (Tr. 51). While a claimant "need not prove she is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of disabling pain and may be considered alongside other factors in assessing the severity of her subjective complaints of pain. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living" raised questions about the weight to give to her subjective complaints); *Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (finding that in assessing a claimant's credibility, the ALJ properly considered the fact that the claimant took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals, did housework, shopped for groceries, and had no difficulty handling money); *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such

allegations."); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

Plaintiff takes particular issue with the fact that the ALJ cited to her fishing hobby as an example of an activity that was somewhat inconsistent with her complaints of disabling pain and difficulty focusing and concentrating. Plaintiff asserts that fishing is not a stressful activity, and that her frequent fishing is not evidence that she is capable of working full time in the "sometimes competitive and stressful conditions in which real people work in the real world." (Doc. 18 at 10). However, and as further discussed below, the fact that Plaintiff is able to go fishing on a regular basis is far from the only reason the ALJ found that Plaintiff is not as limited as she alleged.

Second, the ALJ reasonably considered that the objective medical evidence did not support Plaintiff's subjective complaints regarding disabling back pain. (Tr. 21-22). With respect to Plaintiff's back pain, medical records from the relevant time period indicate that her health care providers regularly noted generally normal physical examination findings. (Tr. 21, 408-10, 425-26, 435, 458, 472-74, 571-72, 582, 588, 604, 655). For example, examination notes from January 9, 2017, indicated that her back was normal, with no tenderness to palpation, and that she exhibited normal posture and gait. (Tr. 500). Examination notes from June 29, 2016, indicated that Plaintiff's muscle bulk and tone were normal and she exhibited 5/5 strength. (Tr. 458). Additionally, one of Plaintiff's examining physicians, Dr. Donald Meyer ("Dr. Meyer"), noted in January 2017 that Plaintiff's MRI indicated only mild lower lumbar facet hypertrophy with no evidence of herniation or nerve root impingement. (Tr. 500). Dr. Meyer, upon examination of Plaintiff, stated that, "I frankly am not noting any significant physical findings." (Tr. 503). Dr. Meyer went on to indicate that, "I note that she is seeking disability and working with a lawyer, and unfortunately, these types

13

of psychosocial circumstances can be associated with relatively poor overall motivation on the part of the patient." *Id*.

The ALJ specifically referenced Dr. Meyer's notes in his opinion, noting that he found Plaintiff's overall motivation to be "relatively poor." (Tr. 22). In placing weight on this statement, the ALJ considered that, as a pain management doctor, Dr. Meyer specialized in Plaintiff's area of impairment and had the opportunity to examine her at length before drawing conclusions. (Tr. 22). Plaintiff argues that the ALJ mischaracterized the treatments notes, because Dr. Meyer was making "a generalization about the entire group of people who experience pain and file for disability," and the statement was not directed to her individually. (Doc. 18 at 9). While Plaintiff's reading of Dr. Meyer's notes is not unreasonable, neither is the ALJ's. Dr. Meyer offered the observation immediately following a specific observation that, after examining Plaintiff, he "frankly [is] not noting any significant physical findings." (Tr. 503). When considered in the larger context, it is reasonable for the ALJ to have believed that Dr. Meyer was inferring that Plaintiff showed poor motivation during treatment. Additionally, this comment was but one of many factors that the ALJ considered from Plaintiff's treatment records, which taken together, led the ALJ to conclude that the objective medical evidence did not support Plaintiff's subjective complaints.

Third, with regard to Plaintiff's mental limitations, the ALJ considered the fact that Plaintiff's treatment records indicate only moderate mental symptoms, a conservative course of treatment, and improvement with medication. (Tr. 21). Plaintiff first established mental health counseling in February 2016, when she began seeing a counselor named Corrie Willis ("Ms. Willis"). At her first visit on February 27, 2016, Plaintiff indicated that she had never had counseling in the past, had never experienced any hospitalizations for mental health treatment, and reported moderate depression for which she had been taking Lexapro. (Tr. 348). Plaintiff visited

14

Ms. Willis on ten occasions between February 2016 and February 2017, which appears from the record to be the only mental health treatment she received during the relevant time period. (Tr. 346-49, 373-78, 688-97). At those sessions, though Plaintiff did report depression, irritability and poor concentration, she also reported that her mood was improving (Tr. 346), her depression and irritability were less (Tr. 347), she was "sleeping good" and experiencing "no crying spells" (Tr. 373), that she was "doing better," and "feeling more hopeful" (Tr. 695), that she felt her depression was improving (Tr. 696), that she was being active by walking and fishing, and was reading books (Tr. 376, 689), that her mood was "even" and she felt her medication was helping (Tr. 690, 697), that her mood was positive and she was feeling less "snappy" (Tr. 693, 697), and that she had been "awake during the day and doing things around the home." (Tr. 697). At these visits, Ms. Willis observed that Plaintiff's memory was intact (Tr. 347, 374, 376, 378, 689, 698), and that her attention span and concentration were good (374, 375, 376, 689, 693, 698). It was proper for the ALJ to consider the conservative nature of Plaintiff's treatment in assessing her subjective complaints. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding that ALJ properly considered claimant's relatively conservative treatment history when evaluating credibility). The ALJ also properly considered that Plaintiff reported some symptom improvement from her prescribed medication. *See Hensley v. Colvin*, 829 F.3d 926, 933-34 (8th Cir. 2016) (If an impairment can be controlled by treatment or medication, it cannot be considered disabling).

The Court finds that the ALJ conducted a proper evaluation of Plaintiff's claimed symptoms, considered relevant factors, and gave good reasons for finding those symptoms not entirely consistent with the record. The evaluation of a claimant's subjective symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). The Court must defer to the ALJ's evaluation of Plaintiff's subjective

symptoms. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

## V. CONCLUSION

Having reviewed the entire record, the Court finds the ALJ properly considered and weighed the medical opinion evidence in the record. The Court also finds the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Consequently, for all of the foregoing reasons, the Court determines that the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

<br>

                                                     SHIRLEY PADMORE MENSAH
                                                     UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of February, 2020.